IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TONI NASH                                    Case No.: 1:24-cv-00587-MWM

    Plaintiff,                              Judge

v.

CITY OF CINCINNATI, et al.,

    Defendants.

---

**PLAINTIFF'S MEMORANDUM CONTRA
TO DEFENDANTS' MOTION TO DISMISS**

---

Plaintiff, by and through counsel, responds to Defendants' City of Cincinnati (City) and Teresa Theetge, and Danita Pettis (collectively "Defendants") Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). Plaintiff, Toni Nash ("Nash" or "Plaintiff"), requests the Court deny the motion to dismiss claims. The response and grounds for this request are set forth in the attached Memorandum Contra.

**MEMORANDUM**

## I.  INTRODUCTION

This is an action under Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e-2(a)(1), 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986 and Ohio Revised Code Chapter 4112, for Defendants' unlawful discriminatory and retaliatory actions against Plaintiff based on race. Defendants subjected Plaintiff to unlawful, discriminatory, and corrupt policies and practices including, but not limited to, retaliation against protected activity, intimidation, demeaning and divisive comments, sham investigations, disparate treatment, and a hostile work

environment based on race. ECF No. 1, PageID #1-24. Defendants harassed, demeaned, and targeted Plaintiff because of race, and after a recording of racially disparaging statements by Defendant Pettis[1] was publicly released, Plaintiff was subjected to physical intimidation and a sham investigation designed to conceal unlawful retaliation. ECF No. 1, PageID #1-24.

The facts are specific, compelling, and indicative of a toxic, retaliatory environment where discrimination based on race is both permitted and supported by the highest levels of supervision within the Cincinnati Division of Police. Plaintiff presents more than a few harmless, offhand comments; Plaintiff reported specific, racially motivated, degrading and discriminatory comments directed at her because of her interracial relationships, and a denial of positions for which she was qualified. When Plaintiff reported the discrimination she was physically intimidated by Defendant Pettis and the City failed to intervene because of race. ECF No. 1, PageID #8, ¶50, ¶51.

These same facts demonstrate a reasonable juror could readily answer in the affirmative the question of whether Plaintiff was the victim of discrimination and harassment. In contrast to the facts presented by Plaintiff, those presented by Defendants are a superficial and dishonest account of events that establish only that a trial is necessary.

## II. STATEMENT OF FACTS

Plaintiff is a black, female law enforcement officer, employed by the Cincinnati Police Department since Sept. 3, 2003. ECF No. 1, PageID #4, ¶15. Plaintiff was in an interracial marriage with a white male and has biracial children. ECF No. 1, PageID #4, ¶16. Plaintiff was an experienced and successful patrol officer who served as an investigator in District 5, had years of demonstrated and applicable experience, and was qualified for the position of investigator. ECF No. 1, PageID #6, ¶¶18, 36, 39.

---

[1] Defendant Danita Pettis, was terminated from the City of Cincinnati in 2024.

On or about August 22, 2022, Defendant Pettis, a black Captain, engaged in a phone conversation with two active Cincinnati Police Sergeants and a retired Cincinnati Police Sergeant, where Plaintiff, and her employment with the Cincinnati Police Department, were the topic of conversation. ECF No. 1, PageID #4, ¶19. This conversation was recorded by one of the involved parties and later shared with Plaintiff by another Sergeant, Sabreen Robinson. During this recorded conversation, Defendant Pettis made a litany of racially offensive statements directed towards Plaintiff, voiced her disgust for black officers in interracial relationships, and expressed her hate for white people in general. ECF No. 1, PageID #4, ¶20. The statements of racial animus include, but were not limited to the following: Defendant Pettis referred to white men as "the enemy" and disparaged Plaintiff for "sleeping with the enemy;" She stated "F#!k (expletive) her (Plaintiff) and her biracial children;" Defendant Pettis referred to Plaintiff as a "monkey ass," a racially derogatory and highly offensive term directed at black people; Defendant Pettis referred to Plaintiff as "retarded," "stupid as a box of rocks," and someone having "the brain of a gnat;" Defendant Pettis stated "Least I ain't (sic) f#%ked (expletive) nobody white!" ECF No. 1, PageID #5, ¶20-¶28. Defendant Pettis was then recorded making threats to destroy Plaintiff's career because plaintiff did not share Pettis' hate for white people, and Pettis made threats to physically harm Plaintiff stating she wanted to "knock (her) in (her) mother (expletive) face!" ECF No. 1, PageID #5, ¶26, ¶27. These appalling racially derogatory statements were much more than random offhand comments; They laid bare Defendant Pettis' racist animus and forecast her intent to harm Plaintiff's career.

Defendants attempt to lessen the impact of the recording (whose authenticity was confirmed in an investigation conducted by Cincinnati Human Resources), and fail to admit there is no doubt Pettis made the racially derogatory, offensive, and threatening statements. ECF No. 1,

PageID #8, ¶54. Defendants also inexplicably attempt to minimize the shocking nature of the statements made on the recording by stating the (1) Plaintiff did not hear the comments directly from Defendant Pettis; (2) Plaintiff chose to listen to the recording, so she was somehow complicit; and (3) Plaintiff failed to immediately report the recording to the Cincinnati Police Internal Investigations Section. ECF No. 4, PageID #35. Defendants also conveniently ignore the fact that the profanity laced and racially charged recording was leaked to a media outlet and became a newsworthy event that exposed the demoralizing statements made about Plaintiff and her family, disrupted Plaintiff's work environment and caused her fear, embarrassment, anxiety and stress. ECF No. 1, PageID #7, ¶43, ¶44. Plaintiff came forward to report the recording on June 5, 2023, but also to report that Pettis had acted on her animus when Plaintiff was denied the opportunity for an open investigator position after refusing to denounce her white husband and bi-racial children. ECF No. 1, PageID #7, ¶40.

The harassment did not stop with mere verbal assaults after Plaintiff came forward. During the pendency of the investigation, Defendant Pettis, while in uniform, visited Plaintiff at her home in an effort to intimidate Plaintiff and her family. ECF No. 1, PageID #8, ¶51. Plaintiff reported this intimidation, and the City took no action. Defendant Theetge contacted Plaintiff after Defendant Pettis came to her home, and Defendant Theetge stated she was unable to take any action against Defendant Pettis for the behavior. ECF No. 1, PageID #8, ¶52.

Human Resources completed an investigation into the racist recording and Plaintiff's exclusion from the District 2 Investigator positions, finding a preponderance of the evidence did not support Captain Pettis was involved in the outcome. ECF No. 1, PageID #8, ¶53. The investigation was superficial, failed to thoroughly investigate Plaintiff's claims, failed to investigate Defendant Theetge's role in the selection of said positions, and never addressed

Defendant Pettis' visit to Plaintiff's home during the pendency of the investigation. The investigation was merely a ruse and had the purpose and effect of covering up Defendants' racially discriminatory actions. ECF No. 1, PageID #9, ¶55.

## III. LAW AND ARGUMENT

### A. Standard of Review

Plaintiffs meet their pleading standard by providing "a short and plain statement of the claim showing that [they] ... [are] entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level." and to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007); *see* also *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  *See* generally, *Hensley Mfg. v. ProPride, Inc*., 579 F.3d 603, 609, 2009 U.S. App. LEXIS 19797, *9, 2009 FED App. 0324P (6th Cir.), 6, 92 U.S.P.Q.2D (BNA) 1003, 1006.

Defendant's Motion must be denied unless it appears beyond doubt that Plaintiff can prove **no facts** in support of a claim that would entitle her to relief. The requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief," is required to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007) quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80. While a complaint attacked by a Rule 12(b)(6) or 12(C) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions.

"Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [actions]," *Bell Atlantic Corp. v. Twombly* at 1960. Plaintiff provides those facts and easily exceeds that standard.

Defendants request the court adopt a standard well above the established pleading standard. However, "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims". *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)* quoting *Scheuer* v. *Rhodes,* 416 U. S. 232, 236 (1974).

Lastly, "Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002).

### B. Plaintiff Provides Plausible Grounds Defendants Discriminated Against Plaintiff Based on Race

Plaintiff presents a set of facts that demonstrate the City of Cincinnati discriminated against Plaintiff based on race. To establish a prima facie case of race discrimination under 42 U.S.C. § 2000e2(a), Plaintiff must show the following: (1) She is a member of a protected class; (2) she was subjected to an adverse employment action;(3) she was qualified for the position; and (4) she was replaced by someone who was not within the protected class (*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1972); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); or a similarly

situated non-protected employee was treated more favorably *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).

Plaintiff, a member of a protected class, suffered an adverse employment action because she is black, in an interracial marriage, and has biracial children. ECF No. 1, PageID #4, ¶15, ¶16. Plaintiff was denied investigative positions, for which she was qualified and had experience, because she engaged in an interracial relationship, and refused to denounce said relationship and adopt the racist views of Defendant Pettis. ECF No. 1, PageID #6, ¶35, ¶38, ¶39, ¶40. While the recorded racist call was itself harassing and discriminatory, it was also a prelude to the discrimination Plaintiff would suffer. The recorded racist rantings laid bare the discriminatory motivations and intentions to punish Plaintiff by negatively impacting her career. ECF No. 1, PageID #4, ¶20- ¶28.

While the racist statements by Defendant Pettis were independently shocking, the existing discriminatory environment was confirmed when Sergeant Linda Sellers contacted Plaintiff to advise she must apologize to Defendant Pettis if she wanted to be considered for the investigative positions. ECF No. 1, PageID #6, ¶36. Plaintiff was advised to apologize for her associations with whites and denounce her biracial children in order to be considered for positions for which she was already qualified. ECF No. 1, PageID #7, ¶37. Other Defendants were aware of Defendant Pettis' propensity for discriminatory behavior based on race, as she had been the subject of prior discriminatory complaints, and Defendants failed to act. ECF No. 1, PageID #7, ¶42, ¶43, ¶52, ¶64.

When Plaintiff refused to adopt Defendant Pettis' anti-white beliefs, or denounce her family, she was denied a reasonable opportunity to present her qualifications during the interview process, and then she was denied the positions. ECF No. 1, PageID #7, ¶38, ¶39, ¶40. The

investigator positions were afforded to less qualified, less experienced personnel outside Plaintiff's class. ECF No. 1, PageID #7, ¶40. Here, there were no neutral, legally significant differences between applicants for the two available investigator positions that would place the other candidates above Plaintiff. *Jones v. City of Cincinnati,* No. 1:22-cv-530, 2024 U.S. Dist. LEXIS 29486 at *23-24 (S.D. Ohio Feb. 21, 2024). Plaintiff was more qualified and possessed prior experience as an investigator in District 5. ECF No. 1, PageID #7, ¶39.

Defendants contend Plaintiff has failed to allege facts that constitute evidence of discrimination. Plaintiff effectively asserted a materially adverse employment action occurred, and the City had evidence of Pettis' discriminatory statements and threats to harm Plaintiff on a recording. ECF No. 1, PageID #7, ¶43. Additionally, during the investigation, Pettis harassed and intimidated Plaintiff by appearing at her residence uninvited, and the City again failed to take any action because of race. ECF No. 1, PageID #8, ¶52. The discrimination and harassment had a material impact on Plaintiff's employment when she was denied opportunity for a meaningful interview and assignment in investigative positions, she was harassed, threatened, and publicly embarrassed because of race, she was subjected to intimidation after reporting the discrimination, and the City failed to take any action. ECF No. 1, PageID #4, ¶20-¶31, ¶52-¶55.

Here, Plaintiff provides substantially more than mere "labels and conclusions" or "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)*). Plaintiff presents factual content that allows this court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

### C. Plaintiff was Subjected to Adverse Employment Action

As a matter of law, to survive Defendants' Motion, Plaintiffs must merely demonstrate that the facts alleged in the Complaint raise an ***inference*** that Defendants were engaged in, supported, or failed to stop discriminatory behavior. Plaintiff can demonstrate all three. Plaintiff's claims include not only specific instances of discriminatory actions and statements detailing racial animus, but detail a pattern of discriminatory statements, actions, and retaliatory behavior that was ignored by Defendants City of Cincinnati and Theetge.

In *Burlington Industries v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257 (1998), the Supreme Court defined an adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits as well as the denial of a raise or promotion." *Burlington Industries v. Ellerth*. Here, Plaintiff has suffered a denial of opportunity for a position for which she was well qualified, because of her race and her anti-racist beliefs. Plaintiff was denied opportunity for a position where she aspired, possessed unique skills and training, and had previously served in a similar capacity. ECF No. 1, PageID #7, ¶39, ¶40.

In *White v. Baxter Healthcare Corp*., 533 F.3d. 381 (Ct. of Appeals, 6th Cir. 2008), the court found a deprivation of increased compensation does constitute an adverse employment action. See also See *Clay v. United Parcel Service*, 501 F.3d at 710, (6th Cir. 2007)  (holding that "deprivation of increased compensation as the result of a failure to train constitutes an adverse employment action"); *Jordan v. City of Cleveland*, 464 F.3d 584, 596 (6th Cir.2006) ("[D]enial of money would more than amply qualify as a materially adverse action to any reasonable employee for Title VII purposes."); *Nguyen v. City of Cleveland*, 229 F.3d 559, 565 (6th Cir.2000) (accepting that the denial of the proper pay increase with the plaintiff's promotion constituted an adverse

employment action); see also *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 193 (5th Cir.2001) (finding that denial of a pay increase can constitute an adverse employment action).

Here, Plaintiff was not denied a lateral transfer, as Defendants claim, as she was presently serving in a patrol capacity and was requesting a transfer to an investigative position, an assignment for which she was clearly qualified. ECF No. 1, PageID #4, ¶17. Investigator positions include an increase in salary through overtime, clothing allowance that includes additional pay for plainclothes positions, and increases related to shift differential pay. ECF No. 1, PageID #7, ¶39. Thus, Plaintiff's evidence does suggest that she has suffered a "tangible employment action" as a result of a deprivation of any meaningful opportunity to obtain an investigator position. At minimum, Plaintiff has produced enough evidence to create a genuine issue of material fact regarding whether exclusion from a job opportunity for which she was well qualified had an adverse impact on her receipt of wages or salary.

The United States Supreme Court has held that discrimination with respect to unfavorable assignments or discrimination in assignments is actionable under Title VII in *Muldrow v. City of St. Louis*, --- U.S. ---, 2024 U.S. LEXIS 1816 (Apr. 17, 2024)[2]. Specifically, *Muldrow* rejected various court of appeals determinations that transfers or assignments had to involve a substantial or significant harm, in favor of standard where the employee need only show (or here allege) "only some injury respecting her employment terms or conditions. The transfer must have left her worse off but need not have left her significantly so." *Id.* Applying *Muldrow* to the allegations here, the Complaint details Plaintiff applied for a position in District 2 as an investigator. This was a position for which she had prior experience and aptitude, but was denied the opportunity to transfer into

---

[2] Available at: https://www.supremecourt.gov/opinions/23pdf/22-193_q86b.pdf (last accessed 1/10/2025).

the investigative positions due to discrimination. ECF No. 1, PageID #7, ¶39. Under *Muldrow*, those allegations alone state claims.

Plaintiff alleges that she was denied a transfer into an investigative position because she was black, in an interracial marriage with a white man, and had biracial children. ECF No. 1, PageID #7, ¶41. Here, the evidence is more than mere supposition and is detailed in the profanity laced, racially motivated rantings of a recording of Defendant Pettis, where she clearly states her intention to derail Plaintiff's career. ECF No. 1, PageID #5, ¶26. When the two investigative positions were posted, and Plaintiff showed interest, Plaintiff was contacted by Sgt. Linda Sellers, who confirmed that Defendant Pettis had control over the ranking of those positions and if Plaintiff wanted to be considered she must apologize for her relationships with white males and denounce her biracial children. ECF No. 1, PageID #6, ¶36, ¶37. In short, Plaintiff, as a black woman, was required to adopt Defendant Pettis' anti-white, racist stance, before she could be considered for positions for which she was already qualified. ECF No. 1, PageID #6, ¶36, ¶37. Defendants were aware of Pettis' militant racist beliefs but did nothing to protect Plaintiff from adverse employment actions, harassment, retaliation, threats, and intimidation; All of which had a material effect on the conditions of Plaintiffs employment. ECF No. 1, PageID #10, ¶64.

### D. Plaintiff was Subjected to a Hostile Work Environment

To establish a race-based hostile work environment claim, a Plaintiff must show that (1) she belongs to a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment and failed to take action." *Sesson v. UPS*, 2023 U.S. App. LEXIS 19935, 2023 FED App. 0349N (6th Cir. 2023) citing *Phillips v. UAWInt'l*, 854 F.3d 323, 327 (6th. 2017). The alleged harassment must be "sufficiently

severe or pervasive to alter the conditions of [a Plaintiff's] employment and create an abusive environment." *Phillips v. UAW Int'l*, 854 F.3d 327 (6th Cir. 2017) (quoting *Williams v. CSX Transp. Co.,* 643 F.3d 502, 512 (6th Cir. 2011).

Plaintiff was subjected to harassment in addition to an adverse employment action when she became the target of Defendant Pettis' race based animus and she was denied opportunity for investigative positions because of race. ECF No. 1, PageID #12, ¶76. Plaintiff pleads that because she is black, and because she is in an interracial marriage and has biracial children, she was subjected to actions that included Defendant Pettis making anti-white comments and making harmful and offensive statements about Plaintiff as a black woman having interracial relationships. ECF No. 1, PageID #4, ¶20-¶28. Plaintiff was subjected to harassing and intimidating threats by Defendant Pettis via a profanity laced, racist recording, and in person when Defendant Pettis came to Plaintiff's house to intimidate her during the pendency of the investigation into the recording. ECF No. 1, PageID #8, ¶50. Plaintiff reported the actions by Defendant Pettis, and other Defendants refused to levy discipline for clear violations of policy because of race. Plaintiff missed work due to the stress and anxiety she suffered as a result of the continued harassment. ECF No. 1, PageID #7, ¶44, ¶45. The City and Defendant Theetge were aware of Pettis' discriminatory actions, as she had received prior complaints of discrimination based on race. ECF No. 1, PageID #10, ¶64. Other Defendants failed to take any corrective action against Pettis because of race. Defendants' discrimination and failure to act had the purpose and effect of unreasonably interfering with her work performance, creating an intimidating, hostile and offensive environment. ECF No. 1, PageID #12, ¶74.

The facts and statements presented by Plaintiff are compelling, offensive, and were race-based comments designed to demean and harass. Plaintiff recounts the demeaning, offensive, and

unwelcome race-based comments, and how anti-white, racial animus was permitted to infect the work environment. Plaintiff's allegations are sufficient to allege a plausible hostile work environment against Defendants, where the severity and pervasiveness of the conduct will be borne out through discovery. See, e.g., *Robards v. BLK Out Transport*, 623 F.Supp. 3d 810, 824-825 (W.D. Ky. 2022).

### E. Defendants Retaliated Against Plaintiff

To establish a prima facie case of retaliation under either Federal or Ohio law, a plaintiff must show that (1) he engaged in a protected activity, (2) the defending party was aware that the plaintiff engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and the adverse action. *Weigel v. Baptist Hosp. of E. Tennessee,* 302 F.3d 367, 381 (6th Cir.2002) (citing *Christopher v. Stouder Mem'l Hosp.,* 936 F.2d 870, 877 (6th Cir. 1991)). The Sixth Circuit has stated "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 525 (6th Cir. 2008).

Here, on or about June 5, 2023, Plaintiff reported the discriminatory statements by Defendant Pettis that were contained in a recording of a phone conversation. ECF No. 1, PageID #7, ¶43. Plaintiff also reported that she had been denied meaningful opportunity to interview for, and was subsequently denied, the investigative positions on District 2. ECF No. 1, PageID #7, ¶40. Plaintiff reported that other, less qualified and experienced persons were placed in the positions because Plaintiff is a black woman with biracial children, and her race and associations offended Defendant Pettis (as clearly stated in the recording). ECF No. 1, PageID #7, ¶40. After Plaintiff

came forward to report the discrimination, Defendant Theetge revisited the investigator position and again excluded Plaintiff from the District 2 investigator position because of race. ECF No. 1, PageID #7, ¶42. Defendant Theetge then refused to discipline Defendant Pettis after she came to Plaintiff's residence to intimidate her during the pendency of the investigation. ECF No. 1, PageID #8, ¶52. As in *Mickey v. Zeidler Tool and Die Co.,* the temporal proximity between events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.

Under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the plaintiff must present evidence sufficient to establish a prima facie case of discrimination. Once a plaintiff satisfies his or her prima facie burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *See id.* The City has failed to proffer any legitimate nondiscriminatory reason for the actions taken, citing no specific legitimate business purpose for either the initial rejection of Plaintiff for the position, or the subsequent rejection of Plaintiff for the investigator position after she complained of race-based harassment. The timing is highly suspect, and Defendants have failed to overcome a rebuttable presumption of discrimination.

### F. Plaintiff Presents Viable Claims Under 42 U.S.C. §§ 1983, 1985, and 1986 Against All Defendants (Counts IV, VI, and VII)

Plaintiff's claims under the Fourteenth Amendment and Equal Protection Clause succeed because the conduct plausibly alleges discrimination, a race based hostile work environment and retaliation under 42 U.S.C. §§ 1983, 1985, and 1986. In § 1983 actions, the court applies the relevant state statute of limitations to determine whether the claim is timely filed. 42 U.S.C. § 1983 (1988); *Wilson v. Garcia,* 471 U.S. 261, 268-69, 105 S.Ct. 1938, 1942-43, 85 L.Ed.2d 254 (1985). For civil rights claims brought in Ohio, the two-year general statute of limitations contained in

14

Ohio Revised Code § 2305.10 applies. *Browning v. Pendleton,* 869 F.2d 989, 992 (6th Cir.1989). However, federal law determines the accrual of civil rights claims. *Sevier v. Turner,* 742 F.2d 262, 272 (6th Cir.1984). Under federal law as developed in this Circuit, the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred. *Friedman v. Estate of Presser,* 929 F.2d 1151, 1159 (6th Cir.1991).

These claims also do not fall outside the statute of limitations and are not time barred. Defendants claim that in August 2022 Plaintiff had reason to know that the act providing the basis for her injury had occurred. ECF No. 4, PageID #44. However, Plaintiff had no knowledge of the recording until it was shared with her on or about November 2022, clear indication their timeline is suspect. ECF No.1, PageID #6, ¶32.

Here, the act that provided the basis for her injury was the denial of any meaningful opportunity to apply for the investigative positions in District 2. While Plaintiff was aware of Defendant Pettis' utter disgust for black women who engaged in relationships with white men, Defendant Pettis acted on the racist views espoused in the recording when, because of race, she denied Plaintiff advancement into an investigative position. ECF No.1, PageID #7, ¶40. The District 2 investigator position was posted on or about April 2023 and Plaintiff was denied the position first on or about May 2023, and again when Defendant Theetge again refused to consider Plaintiff for the position. ECF No.1, PageID #7, ¶42. Plaintiff filed her Complaint in October 2024, well within the statute of limitations under 42 U.S.C. §§ 1983, and 1985.

### G.  Plaintiff Alleges Viable Claims Against Pettis and Theetge

To state a claim under Section 4112.02(J), Plaintiff must allege Chief Theetge and Captain Pettis aided or abetted the City of Cincinnati's allegedly discriminatory actions. *Chulsky v. Golden Corral Corp.*, 583 F. Supp. 3d 1059 (S.D. Ohio 2022). In particular, federal courts in Ohio have

interpreted 4112.02(J) to provide for individual liability where an employee was "involved in or actually ... made the [company's] decision to [discriminate or] retaliate against [the plaintiff]." *Evans v. Hillman Grp., Inc*., No. 1:20CV41, 2021 WL 1140100, at *5 (S.D. Ohio Mar. 25, 2021) (quoting *Oster v. Huntington Bancshares Inc.,* Case No. 2:15-CV-2746, 2017 WL 2215462, at *22 (S.D. Ohio May 19, 2017)) (emphasis added). Here, as noted above, Plaintiff has alleged that Captain Pettis and Chief of Police Theetge were "involved in or actually made" the decision to exclude Plaintiff from the available investigative positions. ECF No.1, PageID #7, ¶41, ¶42. Unlike the Plaintiff in *Chulsky,* Plaintiff offers factual allegations in her Complaint that make it plausible to conclude that Defendants Pettis and Theetge in fact had the power, or exercised control over the decision, to select an investigator for the position. Plaintiff alleges that Defendants Pettis and Theetge directed and conspired to direct or conceal acts of discrimination based on race, retaliation, and to create a hostile work environment. ECF No. 1, Page ID #22, ¶118.

## IV. CONCLUSION

Here, the Plaintiff has presented "enough fact(s) to raise a reasonable expectation that discovery will reveal evidence of illegal [actions]". *Bell Atlantic Corp. v. Twombly* at 196. In *Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002)*, the Supreme Court answered the question of whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination. The Court held that an employment discrimination complaint need not include such facts and instead must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). Defendants lack a sufficient basis in which to request a Motion to Dismiss and the record is replete with facts sufficient to raise a right to relief above the speculative level. Plaintiff has

clearly stated a plausible claim to relief. Based upon the facts, the Court must deny the Defendants'
Motion.

Respectfully submitted,

*/s/Jennifer L. Knight*
Jennifer L. Knight (0095480)
Gottesman & Associates, LLC
9200 Montgomery Rd.
Building E, Suite 18B
Cincinnati, Ohio 45242
Telephone: 513/651-2121
Fax: 513/586-0655
Jknight6291@yahoo.com

*/s/Zachary Gottesman*
Zachary Gottesman (0058675)
Gottesman & Associates, LLC
9200 Montgomery Rd.
Building E, Suite 18B
Cincinnati, Ohio 45242
Telephone: 513/651-2121
Fax: 513/586-0655
zg@zgottesmanlaw.com

*Trial Attorneys for Plaintiff, Toni Nash*

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2025, a true and accurate copy of the forgoing was filed
electronically. Notice of this filing will be sent to all Parties' counsel of record by operation of the
Court's CM/ECF filing system.

*/s/Jennifer L. Knight*
Jennifer L. Knight (0095480)