IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **TONI NASH** | : | Case No. 1:24-cv-00587-MWM |
| **Plaintiff,** | : | |
| v. | : | **DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| **CITY OF CINCINNATI, et al.** | : | |
| **Defendants.** | : | |

## I.  INTRODUCTION

Plaintiff's Response in Opposition ("Response" or "ECF No. 6") to Defendants' Joint Motion to Dismiss (ECF No. 4) does little more than try to muddy the waters. Plaintiff even pleads with the Court to allow the content of the recording she received to transcend space, time, and logic to rescue her claims. But these indisputable facts make the case for dismissal clear:

- On August 22, 2022, while off-duty, Defendant Captain Danita Pettis had a phone conversation with two other nonparties to this lawsuit. (ECF No. 6 at PageID 51). No one was on duty.

- Shortly after the call, a nonparty shared a doctored recording of it with Plaintiff. (*Id.*).

- On April 21, 2023, an investigator position for District 2 became available for officers to apply. (*See* City of Cincinnati Interdepartmental Correspondence Sheet, "District Two Investigative Unit Openings," attached as **Exhibit A**).[1]

---

[1] This document is at the heart of Plaintiff's Complaint and is a public record, thus it may be considered at this stage. It was attached to the City's position statement in response to a Charge of Discrimination filed by Anthony Peters. The Court may "consider … public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein." *Gavitt v. Born*, 835 F.3d 623, 640 and 645 (6th Cir. 2016) (affirming dismissal where lower court considered public record implicated by plaintiff's claim and referred to by Plaintiff in the complaint).

1

- After Plaintiff applied, Plaintiff claims a nonparty told her to apologize to Captain Pettis and disavow her biracial children. (ECF No. 6 at PageID 59); (ECF No. 1, ¶¶ 36-37).

- Candidates were ranked based on objective qualifications. The application process concluded on May 1, 2023 with five total applicants. (**Exhibit A**).

- The five applicants were ranked, with the results published on May 16, 2023. (*Id.*).

- Lieutenant Christopher J. Seta, a nonparty, and Sergeant Jeff Howell, a nonparty, evaluated and ranked the candidates. (*Id.*).

- Ranked first was Anthony Peters, a white male. (*Id.*).; (*see also* Anthony Peters' Charge of Discrimination, attached as **Exhibit B**).[2]

- Ranked second was Derrick Edwards, a Black male and Plaintiff's senior. (*Id.*).

- Ranked third and fourth were Matthew Shideler and Elizabeth McNay, a white male and white female. (*Id.*). Plaintiff was ranked fifth. (*Id.*).

- The same day the list was published, Captain Pettis, who is Black, approved Seta's and Howell's recommendation of Peters as the top choice. (*Id.*).

- In May 2023, Defendant Chief Theresa Theetge, who is white, selected Officer Edwards instead of Peters for the position. (*Id.*).

- About a month after the rank list was published, Plaintiff complained about the content of the doctored recording shared with her in 2022. (ECF No. 6 at PageID 52).

No matter how Plaintiff spins these facts, the allegations in the Complaint do not cross the threshold of plausibility. As a result, and as expanded below, each of Plaintiff's claims should be dismissed under Fed. R. Civ. P. 12(b)(6).

## II.     ARGUMENT

---

[2] On July 24, 2024, Officer Peters filed a Charge of Discrimination against the City of Cincinnati ("Peters Charge"). He alleges Captain Pettis recommended that he be assigned the investigator position. (*Id.*). Next he alleges Officer Edwards "was given the position, solely because he is black, and solely because [Peters is] white." (*Id.*). He claims Chief Theetge made the decision. (*Id.*). The Peters Charge also shows Plaintiff and Officer Peters are represented by the same counsel. (*Id.*)

2

### A. Plaintiff Fails to State a Claim Against the City of Cincinnati.

#### 1. Plaintiff has not plausibly alleged an associational discrimination claim (Count I).

Plaintiff is Black. (Compl., ECF No. 1 ("ECF No. 1"), ¶ 60). But her race discrimination claim is not based strictly on this protected class. Rather, it appears to be based on interracial association. She claims she "suffered an adverse employment action because she is black, in an interracial marriage[3], and has biracial children." (ECF No. 6 at PageID 55).

Plaintiff's Complaint fails to sufficiently satisfy the nuances of an associational discrimination claim. As pled, her association with her white ex-husband and biracial children are not the issue. Instead, the premise of her claim is that a third-party told her she needed to "apologize" for or "denounce" her then-existing relationships *after* she applied and interviewed, for the open investigator position. (*Id.* at PageID 59). Plaintiff does not—because she cannot—suggest anyone capitulated to such conduct to get a leg up on their fellow candidates. She identifies nobody who voiced support for "anti-white beliefs" and was thus rewarded with an investigator role. (*Id.*).

Plaintiff also does not allege that the City of Cincinnati, Captain Pettis, or Chief Theetge required that she "apologize" for or "denounce" her relationships; again, this came from a nonparty. (ECF No. 1, ¶¶ 36-37) ("*After* applying for the positions, Plaintiff was contacted by *Sgt. Linda Sellers*, who advised her that Plaintiff would need to apologize" because she "*believed Sgt. Sellers* was counseling her to denounce her white husband and biracial children[.]") (emphasis added).

---

[3] Plaintiff was not married to a white person when she applied for the District 2 investigator position or when the investigator rank list was released. Plaintiff's allegations implying otherwise are artful misrepresentations. (*See* ECF No. 1-2 at PageID 26) (Plaintiff referring to her former marriage to white man in her Charge of Discrimination).

Nor does Plaintiff plausibly allege that either Officers Edwards or Peters—the top two candidates for the position—held the views she assigns to Captain Pettis before the rank list was published. Sure, she makes the conclusory allegation that "similarly situated individuals employed by Defendant City of Cincinnati were treated more favorably, were not harassed, and did not have materially adverse employment actions taken against them." (ECF No. 1, ¶ 62). But who are these "similar" individuals? And what separates them from Plaintiff's associational class? The Complaint is silent on this; it provides no facts that could support a claim, instead relying only on a recitation of basic elements.

Plaintiff has no claim based on her marriage or children. She cannot plausibly allege that she was treated differently than someone else because she was once in an interracial relationship, or that someone was treated better because they hold anti-white beliefs—either before or after she applied for the investigator position. In the end, there simply is no factual support in the Complaint to take Plaintiff's discrimination claim across the plausibility threshold.

> **2. Plaintiff's own conjecture surrounding the phone call recording is insufficient to support a hostile work environment claim (Count II).**

Plaintiff's Complaint does not plausibly allege a workplace permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of her employment. *AMTRAK v. Morgan*, 536 U.S. 101, 122 (2002) (citation omitted). The redundant allegations—and arguments in response to Defendants' motion—each revolve around the single, off-duty phone call recording, and they are indistinguishable from the allegations she tries to use to support her race discrimination claim. *See Torres v. City of N.Y.*, 2019 U.S. Dist. LEXIS 68168 at *13-14 (S.D.N.Y. Apr. 22, 2019) (behavior at an "off-duty police social event" insufficient to constitute hostile work environment claim); *Meece v. Atl. Se. Airlines, Inc.*, No. 1:04-cv-3698-WSD-ECS, 2006 U.S. Dist. LEXIS 56435 at *6-7 (N.D. Ga.

Aug. 2, 2006) (employer not responsible for hostile acts resulting from nonwork-related, off-duty interactions between co-employees); *Reed v. P&G Mfg. Co.*, 556 F. App'x 421, 433 (6th Cir. 2014) (three instances of alleged harassing behavior, including a threatening email, a hostile phone call, and telephone cord "noose" insufficient for racially hostile work environment claim); *Watts v. Lyon Cty. Ambulance Serv.*, 23 F. Supp. 3d 792, 806 (W.D. Ky. 2014) (no hostile work environment where claim hinged on single phone call).

Plaintiff identifies no situations when Black employees who did not associate with white people experienced more favorable treatment. And any race-based animus Plaintiff attempts to impute to the City of Cincinnati through Captain Pettis's alleged conduct is belied by the fact that Officer Peters, who is white, was ranked first out of all applicants that applied for the open position, with Captain Pettis's endorsement the same day the rank list was published. Any race-based connection arises purely from Plaintiff's own conjecture, which is not enough to support a hostile work environment claim under Title VII or R.C. Chapter 4112. *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 840 (6th Cir. 2024).

### 3. Plaintiff cannot rely on course of action taken by the City of Cincinnati that predates her report as support for her retaliation claim (Count III).

Plaintiff's attempt at a retaliation claim is less about the City of Cincinnati's purported animus against interracial relationships, and more about the convenient timing of when she decided to report her knowledge of the recording. Plaintiff appears to be claiming that although she has a history of interracial relationships—which has not affected her employment with the City over the last 20 years, or for that matter, her previous work as an investigator in District 5—the City's ulterior motive came to bear around May 2023, after she applied for the District 2 investigator position.

5

Like the flaws of her associational discrimination claim, Plaintiff's complaint about the recording cannot take her retaliation claim across the plausibility threshold. She engaged in no protected activity for herself or on behalf of others before she applied for the investigator position. (*See* ECF No. 6 at PageID 63) (characterizing "the act that provided the basis for her injury" *only* as the City of Cincinnati's higher ranking of someone else for the investigator position, which occurred *before* Plaintiff reported the recording).

Again, Plaintiff did not complain about the phone call until after the rank list was released. *See Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 52 (1st Cir. 2020) (noting "the proposition that the plausibility standard is not satisfied when allegations of misconduct are equally consistent with some innocent explanation"); *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 276-77 (1st Cir. 2022) (employees could not prove retaliation by pointing to a course of action by an employer that predates the employees' oppositional conduct). Plaintiff points to no action by Chief Theetge, Captain Pettis, or the City of Cincinnati that predates her report.

Recognizing this damning truth, Plaintiff now suggests Chief Theetge "revisited the investigator position" after her complaint. (ECF No. 6 at PageID 62). If true, that would remove any potential claim against Captain Pettis. As it stands, however, it is no more than a fabrication to avoid dismissal. Plaintiff has long conceded—and the evidence admissible at this stage confirms—that the decision to transfer a Black male into the investigator role had been made well before Plaintiff complained.

Finally, desperate to salvage her retaliation claim, Plaintiff points to Captain Pettis's June 2023 visit to her home and Chief Theetge's and the City of Cincinnati's failure to discipline her for doing so. (ECF No. 6 at PageID 62). But that is not a retaliation claim; it is a request that the Court substitute itself as the super-personnel department for the City. Courts have long held that

6

170812167v3

is not the province of the judiciary. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000) (citations omitted) ("[I]t is inappropriate for the judiciary to substitute its judgment for that of management."). The demands for judging an alleged Title VII violation are high—and must be—to ensure that the statute does not become a general civility code. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

The bottom line is Plaintiff has failed to make a plausible claim of retaliation.

**B. Plaintiff Fails to State a Claim Under 42 U.S.C. §§ 1983, 1985, and 1986 Against All Defendants (Count IV, VI, and VII).**

To avoid dismissal of these claims, Plaintiff argues that only Defendants "claim that in August 2022 Plaintiff had reason to know that the act providing the basis of her injury had occurred." (ECF No. 6 at PageID 63). That is not true. Plaintiff asserted in her claims under 42 U.S.C. §§ 1983, 1985, and 1986 that, "[f]rom *August 2022*," Defendants unlawfully deprived her of her Constitutional Rights in violation of the Fourteenth Amendment and Equal Protection Clause. (ECF No. 1, ¶¶ 98, 100, 101, 103, 104, 116, 117, 119, 124, and 125) (emphasis added).

Thus, each of these claims is time-barred. They are not subject to tolling, and Plaintiff makes no argument that they are.

What is more, Plaintiff does not dispute that her claims under Fourteenth Amendment and Equal Protection Clause are duplicative, particularly those claims against Chief Theetge and Captain Pettis in their official capacities. Because Plaintiff named the City of Cincinnati, the claims against these individuals cannot proceed. *See Frieg v. City of Cleveland*, No. 12-CV-02455, 2013 U.S. Dist. LEXIS 88323 at *4 (N.D. Ohio June 23, 2013); *Tyndle Ridge Dev., LLC v. City of Cincinnati*, No. 09-cv-169, 2009 U.S. Dist. LEXIS 80983 (S.D. Ohio Aug. 31, 2009).

**C. Each of Plaintiff's Remaining Claims Against Chief Theetge and Captain Pettis Fail (Count V).**

Captain Pettis signed off on her department's recommendation of Officer Peters for the open investigator position.  Chief Theetge disagreed, awarding the position to Officer Edwards.  Under Plaintiff's theory of discrimination, the City of Cincinnati discriminated against her because of her association with a white husband and biracial children.  But she points to nothing to suggest that to be the case or that Captain Pettis and Chief Theetge would have aided and abetted such conduct.  Indeed, Plaintiff alleges Captain Pettis is anti-white yet signed off on the white candidate.  Then she points to Chief Theetge to show she chose a member of Plaintiff's own race for the position.

Plaintiff does not make a plausible case that Chief Theetge or Captain Pettis aided and abetted any unlawful conduct by the City of Cincinnati.  Her claims against them under R.C. 4112.02(J) should fail.

### III.   CONCLUSION

In the end, Plaintiff lays bare that the foundation for her Complaint is that a nonparty shared a recording with her and that another nonparty suggested she would have to appease Captain Pettis to be able to laterally transfer into District 2.  A month after not being selected, she decided to report the content of the doctored 2022 recording.  Neither these nor any of Plaintiff's "facts" allow an inference of potential liability for any alleged misconduct.  Thus, for each of the foregoing reasons, and those in Defendants' Motion to Dismiss, Plaintiff's Complaint should be dismissed.

Respectfully submitted,

170812167v3

<u>*/s/ Brian G. Dershaw*</u>
Brian G. Dershaw (72589)
Trevor M. Nichols (103983)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Tel.: (513) 381-2838
Fax: (513) 381-0205
bdershaw@taftlaw.com
tnichols@taftlaw.com

*Trial Attorneys for Defendants City of Cincinnati, Theresa Theetge (in her individual and official capacity), and Danita Pettis (in her official capacity only)*

<u>*/s/ Kimberly A. Rutowski*</u>
Kimberly A. Rutowski
Lazarus Law, LLC
525 Vine Street, Suite 2210
Cincinnati, Ohio 45202
Tel.: (513) 721-7300
Fax: (513) 721-7008
krutowski@hllmlaw.com

*Trial Attorney for Defendant Danita Pettis (in her individual capacity only)*

170812167v3

**CERTIFICATE OF SERVICE**

I certify that on January 27, 2025 the foregoing Answer was filed and served upon counsel of record through the Court's CM/ECF system.

/s/ Brian G. Dershaw

170812167v3