IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| TONI NASH, | : | Case No. 1:24-cv-587 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| CITY OF CINCINNATI, et al., | : | |
| Defendants. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 4). Plaintiff filed a Response in Opposition (Doc. 6), to which Defendants filed a Reply in Support (Doc. 7). Thus, this matter is ripe for the Court's review. For the reasons below, Defendants' Motion to Dismiss (Doc. 4) is **GRANTED IN PART AND DENIED IN PART**.

## ALLEGED FACTS

Plaintiff Toni Nash is a black police officer employed by the Cincinnati Police Department. (Compl., Doc. 1, ¶ 4.) Plaintiff is married to a white man. (*Id.* at ¶ 16.) On August 22, 2022, Defendant Police Captain Danita Pettis spoke with other police staff on a recorded phone call and made offensive statements about Plaintiff. (*Id.* at ¶ 20.) Defendant Pettis' statements included derogatory comments on Plaintiff's interracial marriage, Plaintiff's biracial children, her intelligence, and white people. (*Id.* at ¶¶ 20-25.) Furthermore, Defendant Pettis threatened to physically harm Plaintiff and destroy her

career. (*Id.* at ¶¶ 27-28.) A recording of the conversation was shared with Plaintiff in November 2022. (*Id.* at ¶ 32.)

In April 2023, Plaintiff applied for two investigative positions in a different district. (Compl., Doc. 1, ¶¶ 34, 36.) After Plaintiff applied, she was advised by a police sergeant that she would need to apologize to Defendant Pettis to be considered for the investigative positions. (*Id.* at ¶ 36.) Heeding this warning, Plaintiff contacted Defendant Pettis but refused to apologize for her biracial children. (*Id.* at ¶ 38.) Ultimately, Defendant Pettis helped produce a list of applicants for the positions. (*Id.* at ¶ 41.) The list ranked Plaintiff last despite her being more qualified than some candidates ranked above her. (*Id.* at ¶ 40.)

On June 5, 2023, the recording of Defendant Pettis' comments was leaked to local media outlets. (Compl., Doc. 1, ¶ 48.) That same day, Plaintiff contacted the Cincinnati Police Department to identify Defendant Pettis as a voice in the recording, causing Defendant Chief of Police Teresa Theetge to initiate an investigation into the matter. (*Id.* at ¶¶ 48-49.) During the course of the investigation, Defendant Pettis visited Plaintiff's home to intimidate Plaintiff and her family. (*Id.* at ¶ 50.) Plaintiff reported this intimidation, but Defendant City of Cincinnati ("Cincinnati") and Defendant Theetge failed to take action. (*Id.* at ¶¶ 51-52.) Eventually, the investigation determined that although the language used in the recording was prohibited by Defendant Cincinnati's administrative regulations, there was an insufficient connection to workplace conduct to sustain a violation because the call took place while the police staff were off duty. (*Id.* at ¶ 53.)

2

## PROCEDURAL HISTORY

Plaintiff filed her Complaint on October 16, 2024, bringing claims for race discrimination, hostile work environment, and retaliation against Defendant Cincinnati; conspiracy to violate civil rights, neglect to prevent conspiracy to violate civil rights, and deprivation of rights under Ohio Revised Code § 4112.02(J) against Defendants Pettis and Theetge; and deprivation of rights under 42 U.S.C. § 1983 against all Defendants. (Compl., Doc. 1.) Defendants Cincinnati, Theetge, in her individual and official capacity, and Pettis, in her official capacity then jointly moved to dismiss the Complaint, arguing that Plaintiff's allegations fail to state a claim upon which relief may be granted. (Motion, Doc. 4, Pg. ID 34.)

## LAW & ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim tests a plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005); Fed. R. Civ. P. 12(b)(6). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts accept all factual allegations as true and construe them in the light most favorable to the plaintiff. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). That said, courts are not bound to do the same for a complaint's legal conclusions. *Twombly*, 550 U.S. at 555. And, when a complaint contains sufficient facts to satisfy the elements of an affirmative defense put forth by a defendant, courts may grant dismissal on that basis. *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013).

I.  **Plaintiff's Race Discrimination Claim**

Title VII prohibits an employer from discriminating against any individual with respect to her "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Ohio law similarly provides that it is unlawful for an employer "to discharge without just cause, to refuse to hire, or otherwise to discriminate against [a] person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02(A). Plaintiff brings a race discrimination claim against Defendant Cincinnati under both Ohio and federal law. (Compl., Doc. 1.) A race discrimination claim involves four elements: (1) the plaintiff is part of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position she held; and (4) she was treated differently than similarly situated, non-protected employees. *Walker v. Ohio Dep't of Rehab. & Corr.*, 241 F. App'x 261, 266 (6th Cir. 2007). To survive a motion to dismiss, however, the plaintiff does not need to establish a prima facie case. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). The plaintiff instead "must allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference," of discrimination. *Id.* at 610 (quotations omitted).

Defendants first argue that Plaintiff failed to allege that she suffered an adverse employment action. (Motion, Doc. 4, Pg. ID 38.) "[A] purely lateral transfer or denial of the same, which by definition results in no decrease in title, pay or benefits, is not an adverse employment action for discrimination purposes." *Momah v. Dominguez*, 239 F.

4

App'x 114, 123 (6th Cir. 2007). "Examples of adverse employment actions include firing, failing to promote, reassignment with significantly different responsibilities, a material loss of benefits, suspensions, and other indices unique to a particular situation." *Smith v. City of Salem*, 378 F.3d 566, 575-76 (6th Cir. 2004). Defendants specifically argue that Plaintiff's attempt at becoming an investigator would have simply been a lateral move. (Motion, Doc. 4, Pg. ID 39.) But, the Complaint plainly states that Plaintiff was assigned to the District 5 Patrol when she applied for the open investigator positions. (Compl., Doc. 1, ¶¶ 17, 34.) If Defendant Cincinnati would have promoted Plaintiff to the role of investigator, she would have, at least facially, received an increase in title. Thus, this would not have been a lateral transfer and Defendants' argument fails.

Defendants also argue that Plaintiff's allegations concerning Defendant Pettis' discriminatory beliefs do not, on their own, support an inference of discrimination unless accompanied by additional allegations that Plaintiff was treated differently because of her association with white individuals. (Motion, Doc. 4, Pg. ID 38.) In other words, Defendants suggest that Plaintiff's discrimination claim is purely based off Defendant Pettis' recorded phone call. (*Id.*) What Defendants ignore, however, is that Plaintiff claims that Defendant Pettis, an employee of Defendant Cincinnati, "had a significant role in determining the ranking of applicants" for the open investigator positions. (Compl., Doc. 1, ¶ 41.) Moreover, Plaintiff alleges that Defendant Pettis intentionally placed Plaintiff last on the list because of her troublesome view of white people. (*Id.*) Thus, Plaintiff's discrimination claim also stems from Defendant Pettis' attempt to prevent Plaintiff's promotion. Viewed in a light most favorable to Plaintiff, these allegations are sufficient

5

to support a reasonable inference of discrimination.

## II. Plaintiff's Hostile Work Environment Claim

Defendants next move to dismiss Plaintiff's hostile work environment claim. (Motion, Doc. 4, Pg. ID 42.) Title VII protects an employee who shows that her workplace "is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklist Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotations omitted). A plaintiff may also allege that either "(1) an employer engaged in discrete discriminatory acts such as termination, failure to promote, denial of transfer, or refusal to hire; or (2) the employer's repeated conduct created a hostile work environment." *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 840 (6th Cir. 2024) (quotations omitted). But since these two types of claims are distinguishable, "allegations of discrete acts may be alleged as separate claims, and as such cannot properly be characterized as part of a continuing hostile work environment." *Id.* (quotation omitted).

Defendants argue that some of Plaintiff's allegations of discrimination amount to discrete acts and are thus precluded from supporting her hostile work environment claim. (Motion, Doc. 4, Pg. ID 41.) The Court agrees. Plaintiff's allegation that she was denied the investigator position because of racial bias supports her claim for race discrimination. *Hunter v. Sec'y of United States Army*, 565 F.3d 986, 994 (6th Cir. 2009) (finding that a failure to promote an employee is a discrete act). Conversely, the only remaining allegations of harassment that Plaintiff uses to support her hostile work

6

environment claim are the comments made by Defendant Pettis on the recorded phone call and her visit to Plaintiff's home to intimidate her. (Response, Doc. 6, Pg. ID 60.)

Looking at these allegations together, Plaintiff has not alleged sufficient facts for this Court to infer that the harassment she experienced was pervasive. A Court must consider "the totality of circumstances in determining the severity and pervasiveness of alleged harassment, including 'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance.'" *Ogbonna-McGruder*, 91 F.4th at 840 (quoting *Harris*, 510 U.S. at 23). Moreover, the alleged harassment must be so pervasive to create both an objectively and subjectively hostile work environment. *Harris*, 510 U.S. at 21-22. A plaintiff's experiences of "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Here, there were only two alleged incidents of harassment, occurring at least several months apart. These incidents, although troubling, are too remote to create a hostile work environment. *See, e.g., Reed v. P&G Mfg. Co.*, 556 F. App'x 421, 433 (6th Cir. 2014) (finding that forming a noose behind the plaintiff's head and racist remarks are not sufficiently severe or pervasive to support a hostile work environment claim); *Woodson v. Holiday Inn Express*, No. 18-1468, 2018 U.S. App. LEXIS 28272, at *5 (6th Cir. Oct. 4, 2018) (affirming judgment on the pleadings where the plaintiff only alleged two examples of racial harassment); *Breeden v. Frank Brunckhorst Co., LLC*, 2020 U.S. Dist. LEXIS 115950, at *16 (S.D. Ohio July 1, 2020) ("[T]he case law does not support a finding of hostile work

7

environment based on only two such instances" of harassment.) Furthermore, the alleged harassment occurred outside of Plaintiff's workplace. The Sith Circuit has noted that "when an employee is forced to work for, or in close proximity to, someone who is harassing her outside the workplace, the employee may reasonably perceive the work environment to be hostile." *Duggins v. Steak 'n Shake, Inc.*, 3 F. App'x 302, 311 (6th Cir. 2001). But, Plaintiff has failed to plead any facts suggesting that she worked with Defendant Pettis. Accordingly, even when viewed together, Plaintiff's allegations do not support a claim for hostile work environment.

### III.     Plaintiff's Retaliation Claim

Defendants also move to dismiss Plaintiff's retaliation claim. (Motion, Doc. 4, Pg. ID 42.) In order to establish a prima facie case of retaliation under both Title VII and Ohio Rev. Code § 4112.02, the plaintiff must show that: (1) she engaged in a protected activity; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action. *Carrethers v. Speer*, 698 F. App'x 266, 270 (6th Cir. 2017); *Baker v. Buschman Co.*, 713 N.E.2d 487, 491 (Ohio Ct. App. 1998) (quotation omitted) ("For retaliation claims in Ohio, Federal law provides the applicable analysis for reviewing retaliation claims."). Defendants argue that Plaintiff fails to satisfy the fourth element. (Motion, Doc. 4, Pg. ID 42.) Specifically, Defendants note that Plaintiff applied for a position that became available on April 1, 2023. (Compl., Doc. 1, ¶¶ 34-36.) Plaintiff was then ranked last on a list of applicants. (*Id.* at ¶ 40.) Plaintiff, however, did not report Defendant Pettis' alleged

8

discriminatory phone call until June 5, 2023, after the list had been released. (*Id.* at ¶ 48.) Thus, Plaintiff's identification of Defendant Pettis on the phone recording could not have caused Plaintiff's poor ranking on the applicant list because she identified Defendant Pettis after the rankings were released.

Plaintiff responds by relying on the *McDonnell Douglas* burden shifting standard, arguing that she has provided sufficient evidence of a prima facie case of discrimination and Defendants must accordingly articulate a nondiscriminatory reason for listing Plaintiff last on the applicant list. (Response, Doc. 6, Pg. ID 62.) But, a "prima facie case under *McDonnel Douglas* is an evidentiary standard, not a pleading requirement." *Keys*, 684 F.3d at 609. Instead, at the initial pleading stage, the ordinary rules of notice pleading apply and a complaint will be upheld if it satisfies the "plausibility" standard of *Twombly* and *Iqbal*. *Id.* at 610. Regardless of this lower standard, though, Plaintiff still has not sufficiently pled a claim for retaliation. In an attempt to show a causal connection, Plaintiff claims that once she identified Defendant Pettis in the phone recording, that Defendant Theetge revisited the investigator position applications and again excluded Plaintiff for consideration for the two roles. (Response, Doc. 6, Pg. 62 (citing Compl., Doc. 1, ¶ 42).) This allegation, however, exists nowhere in the Complaint. Since Plaintiff failed to allege a materially adverse employment action logically connected to a protected activity, her retaliation claim must be dismissed.

### IV. Plaintiff's 42 U.S.C. §§ 1983, 1985, and 1986 Claims

Defendants next move for dismissal on Plaintiff's Fourth Claim for deprivation of rights under 42 U.S.C. § 1983, Sixth Claim for conspiracy to violate civil rights under 42

9

U.S.C. § 1985, and Seventh Claim for neglect to prevent conspiracy to violate civil rights under 42 U.S.C. § 1986. (Motion, Doc. 4, Pg. ID 43-45.) Defendants argue that these claims are all time-barred. (*Id.* at Pg. ID 44). In Ohio, actions premised upon Section 1983 and Section 1985 are subject to a two-year statute of limitations. Ohio Rev. Code § 2305.10; *Basista Holdings, LLC v. Ellsworth Twp.*, 710 F. App'x 688, 691 (6th Cir. 2017); *Dotson v. Lane*, 360 F. App'x 617, 619 n.2 (6th Cir. 2010). Alternatively, Section 1986 claims are subject to a one-year statute of limitations. 42 U.S.C. § 1986; *Fisher v. City of Columbus*, 2:24-CV-150, 2024 U.S. Dist. LEXIS 224190, at *19 (S.D. Ohio, Dec. 11, 2024). The statute of limitations for these claims begins to run when the plaintiff knows or has reason to know of the injury which is the basis of her action. *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984).

Defendants argue that the statute of limitations started running on August 22, 2022, when Defendant Pettis made the derogatory comments on the phone call. (Motion, Doc. 4, Pg. ID 44.) Defendants ignore, however, that the recording of Defendant Pettis' phone call was not shared with Plaintiff until November 2022. (Compl., Doc. 1, ¶ 32.) Thus, Plaintiff had no reason to know of her harm until November 2022. Accordingly, the Court will begin its statute of limitations calculation from that date. Plaintiff's Complaint was filed on October 16, 2024, approximately 23 months after the recording was shared with her. This is within the two-year statute of limitations for Plaintiff's Fourth and Sixth Claims, but it exceeds the one-year statute of limitations for Plaintiff's Seventh Claim. Thus, Plaintiff's Seventh Claim is time-barred and must be dismissed.

Defendants also argue that including Defendants Pettis and Theetge in their

10

official capacities, in addition to Defendant Cincinnati for her deprivation of rights claim, is duplicative. (Motion, Doc. 4, Pg. ID 43.) A claim against a party in their official capacity is "in all respects other than name, to be treated as a suit against the entity." *Ky v. Graham*, 473, U.S. 159, 166 (1985). By naming Defendant Cincinnati in her deprivation of rights claim, Defendants Pettis and Theetge's inclusion is redundant. *See id.* Accordingly, Plaintiff's Fourth Claim against Defendants Pettis and Theetge in their official capacity must also be dismissed.

## V. Plaintiff's Deprivation of Rights Claim against Defendants Pettis and Theetge

Finally, Defendants move for dismissal of Plaintiff's Deprivation of Rights claim under Ohio Revised Code § 4112.02(J). This section makes it unlawful "to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice." Ohio Rev. Code § 4112.02(J). "Section 4112.02(J) imposes liability on a 'person' as opposed to an 'employer.'" *Evans v. Hillman Grp., Inc.*, No. 1:20-CV-41, 2012 U.S. Dist. LEXIS 56373, at *12 (S.D. Ohio Mar. 25, 2021). To successfully state a claim, the plaintiff must allege that the defendants "were involved in or actually made the decision to [discriminate] against her." *Cummings v. Greater Cleveland Reg'l Transit Auth.*, 88 F. Supp. 3d 812, 820 (N.D. Ohio 2015); *Evans*, 2012 U.S. Dist. LEXIS 56373 at *13.

Here, Plaintiff alleges that Defendants Pettis and Theetge aided and abetted each other in punishing Plaintiff for initiating a complaint and then ensuring that there was no meaningful investigation into Plaintiff's complaint. (Compl., Doc. 1, ¶ 112.) Defendants argue that Plaintiff cannot claim that Defendants Pettis and Theetge aided

11

and abetted themselves. (Motion, Doc. 4, Pg. ID 45-46.) To be sure, "a corporate entity cannot aid and abet itself in employment discrimination." *Oster v. Huntington Bancshares Inc.*, No. 2:15-CV-2746, 2017 U.S. Dist. LEXIS 76651, at *68 (S.D. Ohio May 19, 2017). There is, however, no rule preventing employees from aiding and abetting each other. *Id.* (denying summary judgment where the plaintiff alleged that two employees aided and abetted each other). Thus, Plaintiff's claim may continue. *Id.*

## CONCLUSION

Based on the foregoing reasons, Defendants' Motion to Dismiss (Doc. 4) is **GRANTED IN PART AND DENIED IN PART.** The Court **ORDERS** the following:

1. Plaintiff's race discrimination claim **SHALL PROCEED**;

2. Plaintiff's hostile work environment claim is **DISMISSED**;

3. Plaintiff's retaliation claim is **DISMISSED**;

4. Plaintiff's deprivation of rights claim against Defendant Cincinnati under 42 U.S.C. § 1983 **SHALL PROCEED**;

5. Plaintiff's deprivation of rights claim against Defendants Pettis and Theetge in their official capacities under 42 U.S.C. § 1983 is **DISMISSED**;

6. Plaintiff's deprivation of rights claim against Defendants Pettis and Theetge under Ohio Revised Code § 4112.02(J) **SHALL PROCEED**;

7. Plaintiff's conspiracy to violate civil rights claim **SHALL PROCEED**; and

8. Plaintiff's neglect to prevent conspiracy to violate civil rights claim is **DISMISSED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND